IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH

EDWARD H. CHILDS,                )
                                 )
                                 )    2:22-CV-01318-MJH
         Plaintiff,              )
                                 )
     vs.                         )
                                 )
PROGRESSIVE PREFERRED            )
INSURANCE COMPANY,               )

         Defendant,

**OPINION**

Plaintiff, Edward H. Childs, brings the within action against Defendant, Progressive Preferred Insurance Company, for claims of Bad Faith pursuant to 42 Pa.C.S. § 8371 and Breach of Contract arising from an underinsured motorist (UIM) claim for injuries and damages sustained in a motor vehicle accident. (ECF No. 1-2). Progressive moves for partial summary judgment pursuant to Fed. R. Civ. P. 56 seeking dismissal of the Bad Faith claim only. (ECF No. 23). The parties provided briefs, appendices, and concise statements of material facts. (ECF Nos. 24, 25, 27, 28, and 29). The matter is now ripe for decision.

For the following reasons, Progressive's Motion for Partial Summary Judgment will be granted, and the Bad Faith claim (Count I) will be dismissed.

I.   Background

On February 2, 2019, Mr. Childs allegedly suffered injuries from a motor vehicle accident. (ECF No. 28 at ¶ 1). Four days later, Mr. Childs presented to the emergency room with right-sided face, chest, abdomen, and lower back pain. *Id*. at ¶ 10. For treatment of said injuries, Mr. Childs began physical therapy sessions. *Id*. at ¶ 12. Thereafter, Mr. Childs began

to experience right shoulder pain, which he has asserted was caused by exercises performed in physical therapy. *Id*. at ¶ 13.

At the time of the accident, Mr. Childs was insured under an automobile insurance policy issued by Progressive. *Id*. at ¶ 2. On July 13, 2020, upon Mr. Child's counsel's request, Progressive opened a UIM claim. *Id*. at ¶ 5. On July 15, 2020, Progressive requested Mr. Child's complete medical records demand packet, primary care records, and other information for Progressive's evaluation. *Id*. at ¶ 7. On July 24, 2020, Mr. Childs's counsel informed Progressive that the tortfeasor's liability insurer would be tendering its $100,000 liability limit and requested consent to settle with the tortfeasor. *Id*. at ¶ 8. Mr. Child's counsel also granted Progressive permission to review the first-party medical file. *Id*. On July 24, 2020, Progressive granted consent to settlement, waived subrogation, and also requested Mr. Childs's primary care records and deposition transcripts and expert reports from the underlying bodily injury suit. *Id*. at ¶ 9. On August 6, 2020, based upon its evaluation of Mr. Childs's UIM claim, Progressive offered $1,000 to settle Mr. Childs's UIM claim. *Id*. at ¶ 15. On August 11, 2020, Mr. Childs rejected the $1,000 offer, and forwarded Mr. Childs's 2016 through 2018 tax returns. *Id*. at ¶ 17. On August 24, 2020, Mr. Childs's counsel forwarded tax returns for the years 2010 to 2015. *Id*. at ¶ 18. Mr. Childs's counsel also informed Progressive that surgery was recommended for Mr. Childs's shoulder, but Mr. Childs decided to not move forward with surgery at that time. *Id*. at ¶ 19.

Upon learning of Mr. Childs's decision, Progressive requested all treatment records pertaining to the shoulder and the surgery recommendation as well the economist/CPA report, 2019 tax returns including Schedule C information, and any lien information. *Id*. at ¶ 20. On May 18, 2021, Progressive's defense counsel again requested any liens, Mr. Childs's 2019 and

2020 tax returns, radiological studies, and treatment records for the right shoulder, and any and all treatment records after March 30, 2020. *Id*. at ¶ 21.  On August 11, 2021, Progressive examined Mr. Childs under oath, requested updated medical records, and requested a demand packet. *Id*. at ¶ 22-23.  On September 10, 2021, defense counsel emailed a letter to Mr. Childs's counsel, stating that he was still waiting for all of the additional records and information that Progressive had previously requested so that Progressive could complete its evaluation of Mr. Childs's claim. *Id*. at ¶ 24.   On September 23, 2021, Mr. Childs's counsel informed defense counsel that Mr. Childs was withdrawing his claim for lost income, and counsel also provided additional medical records to defense counsel.  *Id*. at ¶ 25.  On October 19, 2021, defense counsel sent an email to Mr. Childs's counsel stating that the records provided on September 27, 2021 had been reviewed; however several items that had been previously requested, such as lien information, all right shoulder diagnostic and treatment records, chiropractic records from before and after the accident, and primary care records from the 5 years prior to the accident and after March 30, 2020, were still missing *Id*. at ¶ 27.

On March 22, 2022, Progressive retained Dr. Brian Jewell to perform a film review.  *Id*. at ¶ 32.  The right shoulder MRI from February 13, 2020, revealed severe tendinosis and a highgrade interstitial tear of the subscapularis with dislocation of long head biceps tendon. *Id*. at ¶ 34. On July 7, 2022, Dr. Jewell opined that Plaintiff's right shoulder complaints were not caused or aggravated by the February 2, 2019, accident or by the resultant physical therapy care, because physical therapy records do not reference an acute injury or any specific mechanism of injury that would cause a tear of his rotator cuff.  *Id*. a ¶ 35.

On August 4, 2022, following receipt and review of Dr. Jewell's opinion, and all treatment records, and considering that the wage loss claim had been withdrawn, Progressive

3

offered $2,500 to resolve Mr. Childs's UIM claim. *Id*. at ¶ 39. Mr. Childs's counsel indicated that he valued Mr. Childs's UIM claim between $25,000 to $50,000. *Id*. at ¶ 38.

On or about December 30, 2022, Plaintiff produced the expert report of Dr. Victor Prisk. Dr. Prisk, after completing an examination of Plaintiff and review of the medical records, opined that Plaintiff sustained a right shoulder injury as a result of performing physical therapy for the injuries sustained in this motor vehicle accident. *Id*. at ¶ 40. On or about February 15, 2023, Progressive deposed David Spaeder, P.T., Mr. Childs's physical therapist. *Id*. at ¶ 41. Dr. Spaeder testified that Mr. Childs was initially treated for lower back injuries sustained in the accident. *Id*. at ¶ 42. While undergoing an exercise called "suitcase carries," Mr. Childs began to complain of pain in his right shoulder. *Id*. Dr. Spaeder testified that the only cause of said injury was the exercises Mr. Childs was performing for his accident-related back injuries. *Id*. at ¶ 43.

II.   Relevant Standard

According to Federal Rule of Civil Procedure 56, a court must grant summary judgment where the moving party "shows that there is no genuine dispute as to any material fact" and the moving party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). For a dispute to be genuine, there must be "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party." *Moody v. Atl. City Bd. of Educ.*, 870 F.3d 206, 213 (3d Cir. 2017) (internal quotations omitted). Additionally, for a factual dispute to be material, it must have an effect on the outcome of the suit. Id. In reviewing and evaluating the evidence to rule upon a motion for summary judgment, the court must "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the" non-moving party. *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014) (internal quotations omitted). However,

4

where "the non-moving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,'" the moving party is entitled to judgment as a matter of law. *Moody*, 870 F.3d at 213 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

"The movant has the burden of showing that there is no genuine issue of fact, but the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a jury verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). "Discredited testimony is not normally considered a sufficient basis for drawing a contrary conclusion. Instead, the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Id*. at 256-57 (internal citation omitted). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id*. at 249-50 (internal citations omitted). Judges are not "required to submit a question to a jury merely because some evidence has been introduced by the party having the burden of proof, unless the evidence be of such a character that it would warrant the jury in finding a verdict in favor of the party." *Id*. at 251 (internal citation omitted).

III.  Discussion

Mr. Childs brings a statutory bad faith action against Progressive under 42 Pa.C.S. § 8371 for Progressive's handing of his UIM claim. Specifically, he contends that Progressive did not perform a thorough and reasonable investigation and did not reasonably evaluate the claim after the undisputed medical testimony in this matter.

The Pennsylvania bad faith statute provides in its entirety:

In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:

> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
> (2) Award punitive damages against the insurer.
> (3) Assess court costs and attorney fees against the insurer.

42 Pa.C.S.A. § 8371. To succeed on a bad faith claim, a plaintiff-insured must prove, by clear and convincing evidence: "(1) that the insurer did not have a reasonable basis for denying benefits under the policy; and (2) that the insurer knew of or recklessly disregarded its lack of a reasonable basis in denying the claim." *Nw. Mut. Life Ins. Co. v. Babayan*, 430 F.3d 121, 137 (3d Cir.2005); *Terletsky v. Prudential Prop. & Cas. Ins. Co.*, 437 Pa.Super. 108, 649 A.2d 680, 688 (1994). Although the term "bad faith" is not defined in the statute, courts have subsequently determined that a variety of carrier actions can constitute bad faith, including "a frivolous or unfounded refusal to pay, lack of investigation into the facts, or a failure to communicate with the insured." *Frog, Switch & Mfg. Co., Inc. v. Travelers Ins. Co.*, 193 F.3d 742, 751 n. 9 (3d Cir. 1999); see also *Terletsky*, 649 A.2d at 688. "The 'clear and convincing' standard requires that the plaintiff show that the evidence is so clear, direct, weighty and convincing as to enable a clear conviction, without hesitation, about whether or not the defendants acted in bad faith." *J.C. Penney Life Ins. Co. v. Pilosi*, 393 F.3d 356, 367 (3d Cir. 2004) (quoting *Bostick v. ITT Hartford Group, Inc.*, 56 F.Supp.2d 580, 587 (E.D.Pa. 1999)) (quotations omitted). "Thus, the plaintiff's burden in opposing a summary judgment motion is commensurately high in light of the substantive evidentiary burden at trial." *Pilosi*, 393 F.3d at 367 (citing *Kosierowski v. Allstate Ins. Co.*, 51 F.Supp.2d 583, 588 (E.D.Pa. 1999)); see also *Anderson*, 477 U.S. 242, 248, 106 S.Ct. 2505 (1986) ("we conclude that the determination of whether a given factual dispute requires submission to a jury must be guided by the substantive evidentiary standards that apply to the case. This is true at both the directed verdict and summary judgment stages.").

A. Progressive's Investigation

Progressive contends that Mr. Childs cannot prove by clear and convincing evidence that Progressive did not perform a thorough and reasonable investigation. Progressive further maintains that Mr. Childs never served written discovery or depose anyone, so he does not have any evidence, let alone clear and convincing evidence, to support a bad faith claim. Mr. Childs argues that Progressive's UIM evaluation was based upon incomplete records and a compensated medical expert's opinion that Plaintiff's right shoulder injury was not caused or aggravated by the February 2, 2019, accident, or resultant care. Mr. Childs contends that Progressive's expert conflicts with the medical records and testimony of Mr. Childs's treating medical providers.

Where a plaintiff asserts a bad faith claim based upon a failure to investigate, "[a] plaintiff […] must show that the outcome of the case would have been different if the insurer had done what the insured wanted done." *Blaylock v. Allstate Ins. Co.,* 2008 WL 80056, *13 (M.D.Pa. Jan.7, 2008) (citing *Zappile v. AMEX Assurance Co., 928 A.2d 251, 262* (Pa.Super.2007)). In examining alleged bad faith conduct, "[c]ourts have routinely found that it is reasonable for an insurance company to rely on expert opinion in its investigation into claims and accidents." *Walter v. Travelers Pers. Ins. Co.*, No. 4:12-CV-346, 2016 WL 6962620, at *7 (M.D. Pa. Nov. 29, 2016). Specifically, "[a]n insurer can rely on IMEs of qualified health professionals who examine claimants in a usual and customary manner." *Seidman v. Minnesota Mutual Life Ins. Co.*, 40 F.Supp.2d 590, 594 (E.D.Pa.1997).

Here, Mr. Childs has failed to demonstrate that Progressive would have drawn a different conclusion had it conducted any additional independent investigation, that it delayed its evaluation, or that its evaluation was unreasonable. The record reflects Progressive's consistent

7

and persistent investigation into Mr. Childs's UIM claim, where delay was attributable to Mr. Childs or his counsel.  Further, Progressive's film review opinion of Dr. Jewell concluded that Mr. Childs's right shoulder complaints were not caused or aggravated by the February 2, 2019 accident or resultant care, because physical therapy records do not reference an acute injury or any specific mechanism of injury that would tear his rotator cuff.  In addition, Dr. Jewell opined that Mr. Childs's MRI findings were due to chronic conditions common for a person his age.  Dr. Jewell's opinions establish a reasonable basis for Progressive to contest the value of Mr. Childs's UIM claim.  Therefore, Mr. Childs cannot meet his burden to show that a reasonable juror could find by clear and convincing evidence that Progressive did not conduct a thorough and reasonable investigation.  As such, Mr. Childs's bad faith claim, in this regard, fails.

B.  Progressive's Settlement Offer

Progressive maintains that it acted reasonably in its settlement offers. Mr. Childs argues that Progressive did not reasonably evaluate the claim after the undisputed medical testimony in this matter.

"Generally, Pennsylvania law does not treat as bad faith an insurer's low but reasonable estimate of an insured's losses." *Seto v. State Farm Ins. Co.*, 855 F. Supp. 2d 424, 430 (W.D. Pa. 2012) (citing *Brown v. Progressive Ins. Co.*, 860 A.2d 493, 501 (Pa. Super. Ct. 2004)). However, "low-ball offers which bear no reasonable relationship to an insured's actual losses can constitute bad faith within the meaning of § 8371." *Seto*, 855 F. Supp. 2d at 430 (citing *Brown*, 860 A.2d at 501).

Here, the record reflects that Progressive made an initial offer in an amount consistent with its investigation into Mr. Childs's UIM claim.  And despite Mr. Childs's allegations of a "lowball" offer, he has not produced evidence that supports a value that differs from

8

Progressive's evaluation.  Indeed, the record reflects that Mr. Childs' initially demanded $500,000 and then later valued his claim between $25,000 to $50,000.  Both demands are conclusory in nature and without specific objective support that would serve to undermine Progressive's valuation.  In the interim, Mr. Childs's had dropped his wage loss claim and was not pursuing recommended surgery on his right shoulder.  Further, the parties have produced reasonable conflicting expert reports relative to the mechanism and cause of Mr. Childs's right shoulder injury.  Thus, with no evidence that objectively values Mr. Childs's claim beyond Progressive's offers, no reasonable juror could find bad faith by clear and convincing evidence.

IV.  Conclusion

Upon consideration of the foregoing, the claim for Bad Faith asserted by Mr. Childs, in each instance and in the totality of circumstances, fails to produce sufficient evidence for any jury to conclude bad faith by clear and convincing evidence.  As such, Progressive's Motion for Partial Summary Judgment will be granted.  Mr. Childs's claim for Bad Faith in Count I of his complaint is dismissed.   A separate order will follow.

BY THE COURT:

_____
Marilyn J. Horan
United States District Judge